# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01621-SCT

*VANESSA DECKER a/k/a VANESSA FRANCIS*
*DECKER a/k/a VANESSA FRANCES DECKER*
*a/k/a FRAN*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2008 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 08/04/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The grand jury indicted Vanessa Decker under the Mississippi Vulnerable Adults Act

of 1986,[1] for using her mother's money "without her consent."  But at trial, the evidence

established that she had obtained her mother's consent to use the money, so the State

requested – and the trial judge granted – a jury instruction that allowed the jury to find

---

[1]Miss. Code Ann. §§ 43-47-1 to 43-47-39 (Rev. 2009).  In 2010, the Legislature changed the name of the act to the Mississippi Vulnerable Persons Act of 1986. *See* Miss Code Ann. §§ 43-47-1 to 43-47-39 (Supp. 2010).

Decker guilty, even if her mother had given her permission to use the money. Decker was convicted by the Clay County Circuit Court and sentenced to serve a term of four years in the custody of the Mississippi Department of Corrections. She also was sentenced to pay restitution in the amount of $4,120 and a fine in the amount of $250 and all court costs. This discrepancy between the indictment and the jury instructions was material, so we reverse.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     During the almost two years Nannie Mae Morris – who had short-term memory loss and could not provide for her own needs – lived with her daughter, Decker, Morris allowed Decker to write checks on Morris's checking account "for whatever she needed." Decker had an agreement with the bank that she could cash Morris's checks – consisting of Social Security disability payments – and draw on Morris's checking account. Decker wrote checks totaling $10,255.02.

¶3.     The grand jury indicted Decker on four counts of exploitation of a vulnerable adult. The State voluntarily dismissed the first count, and the jury found Decker not guilty on two of the three remaining counts, but guilty on the fourth count, which charged her with writing checks totaling $4,120 during a four-month period of time when Morris was living with Decker's sister, and Decker was in Texas caring for her son, who had severely injured himself in a suicide attempt.

¶4.     Decker appealed her conviction, raising both the the discrepancy between the indictment and the jury instructions and the constitutionality of the statute under which she was convicted. On appeal, her case was assigned to the Court of Appeals, which affirmed

2

her conviction. We granted certiorari to review the decisions of the trial court and the Court of Appeals. Because the first issue is dispositive, we decline to address the second.

## ANALYSIS

### I.

¶5.    The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."[2]  The Mississippi Constitution also grants the accused in criminal prosecutions the right "to demand the nature and cause of the accusation."[3]  An indictment's primary purpose is "to provide the defendant with a concise statement of the crime so that he may have a reasonable opportunity to prepare and present a defense to those charges."[4]

¶6.    This right to notice through an indictment requires more than a bare assertion of the name of the crime;  that is to say, an indictment for shoplifting, for instance, must say more than "the accused committed the crime of shoplifting."  The accused must also be reasonably informed of the material facts, details, and conduct the grand jury believes constituted the crime.  And once the grand jury hands down a true bill that alleges an accused committed a

---

[2] U.S. Const. amend. VI.

[3] Miss. Const. art. 3 § 26.

[4] ***Burrows v. State***, 961 So. 2d. 701, 705 (Miss. 2007).

particular crime by engaging in certain conduct – absent waiver or a request for a lesser included offense – the accused must be prosecuted for that crime, and no other.[5]

¶7.    Count IV of the indictment charged that Decker willfully, feloniously, unlawfully, and knowingly had exploited Morris by writing checks or withdrawing cash from Morris's checking account to herself and her husband while Morris was not actively in Decker's care, **without the consent** of Morris, in violation of Mississippi Code Section 43-47-19(1), (2)(b).

¶8.    The indictment charged exploitation, a term that, according to the statute, requires "illegal or improper use" of the money.[6]  So the grand jury was required to believe that Decker had used the money for an improper purpose.  In describing the improper use of the money, the grand jury charged that Decker had used the money without her mother's consent.

¶9.    There is no indication that the grand jury believed Decker's use of her mother's money with her mother's consent was an improper use.  In fact, the wording of the indictment suggests that the grand jury believed Decker's use of the money was improper only if the money was used without Morris's consent.  This Court has held that "[i]f the

---

[5] *See e.g.* **Wolfe v. State**, 743 So. 2d 380, 384 (Miss. 1999) ("Courts may not amend an indictment as to a substantive matter without the agreement of the grand jury which issued the indictment, unless the indictment only regards mere formalities."); **Williams v. State**, 445 So. 2d 798, 806 (Miss. 1984) (Jury instructions may not materially vary from an indictment).

[6] Miss. Code Ann. § 43-47-5(I) (Rev. 2009).

grand jury did not know what crime they were charging against the defendant, how could the defendant know the nature of the crime with which he is charged?"[7]

¶10. At trial, the State produced no evidence that Decker had used her mother's money without her consent. And several witnesses testified that Decker, in fact, had obtained her mother's consent. So the State submitted a jury instruction that instructed the jury that it could find Decker guilty "[r]egardless of whether it was done **with, or without [her] consent**."[8] The trial judge gave the instruction over Decker's objection.

¶11. The State points out that – because the indictment cited the applicable statute, which clearly provides that one can exploit a vulnerable person with or without the victim's consent – Decker was on notice of what she had to defend. Stated another way, the State says absence of consent is not an element of the crime it had to prove. And at oral argument, the State informed us of its view that any expenditure of a vulnerable adult's money that benefits the spender is an improper use.

¶12. Decker argues that the wording of the indictment led her to believe that having her mother's permission – which the evidence produced at trial indicates she had – was a complete defense to the charges. She further argues that she relied on the indictment's wording in preparing to defend the charge at trial; and she points out that she did not learn

---

[7] ***Quang Thanh Tran v. State***, 962 So. 2d 1237, 1246 (Miss. 2007) (quoting ***Brumfield v. State***, 40 So. 2d 268 (Miss. 1949)).

[8] Emphasis added.

until the trial that the jury would be instructed that she could be found guilty, even if she had permission to use her mother's money.

¶13. Also, as stated above, the statute's "improper purpose" language unquestionably is an essential element of the crime. Decker argues that the grand jury may very well have found her use of her mother's money to be an "improper use" only if expenditures were made without her permission. The indictment's limiting language supports this argument, as no other explanation is offered as to why the limiting language was included in the indictment.

¶14. We do not today hold any discrepancy between the language of an indictment and the proof at trial or the jury instructions requires reversal. It is only where, as here, the discrepancy is material and prejudices an accused's ability to defend; or where the jury instructions deviate in a material and substantive way from the conduct considered by the grand jury to constitute the crime, that reversal is required.

¶15. Although Decker's indictment sufficiently informed her of the crime and the conduct the grand jury believed constituted the crime, the trial judge erroneously issued a jury instruction that materially conflicted with the indictment's language. And because the error was not cleared up in other instructions, the jury instructions, when taken as a whole, created injustice by expanding, beyond the charges in the indictment, the bases on which Decker could be convicted.

¶16. The State argues that Count IV of the indictment included a citation to the statute Decker is charged with violating, and the statute explicitly states "with or without consent."

6

But, in light of the indictment's limiting language, the citation is insufficient to put Decker on notice of the charge she would be required to defend against at trial.

¶17.   The State does not contest that Decker had permission to use her mother's money. Indeed, the State sought the jury instruction that expanded the charge against Decker precisely because the evidence at trial clearly established that she did have permission. We therefore decline to remand this case for a new trial.

**II.**

¶18.   Decker also claims that the portion of the Act under which she was prosecuted is unconstitutionally vague. The statute under which Decker was indicted states that "[i]t shall be unlawful for any person to . . . **exploit** any **vulnerable adult**."[9] The wording of the statute begs two questions: Who is a vulnerable adult, and what does it mean to exploit? Both questions are answered by statutory definitions. The term "vulnerable adult" means

> a person . . . whose ability to perform the normal activities of daily living or to provide for his or her own care or protection . . . is impaired due to a mental, emotional, physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging.[10]

¶19.   It is important to note here that mental impairment is not required for one to qualify under this statute as a "vulnerable adult." Indeed, the statute's broad definition of a vulnerable adult includes a person with completely normal mental capacity, but whose ability to perform the normal activities of daily living is impaired because of a physical limitation,

---

[9]Miss. Code Ann. § 43-47-19(1) (Rev. 2009) (emphasis added).

[10]Miss. Code. Ann. § 43-47-5(n) (Rev. 2009).

such as blindness or the inability to walk. Decker argues that the statute robs such persons of their right to decide what they wish to do with their own money by imposing someone else's view of what is an "improper use."

¶20. The statute's term "exploitation" is defined as "the illegal or **improper use** of a vulnerable person or his resources for another's profit or advantage, **with or without the consent** of the vulnerable adult . . . ." The term "improper purpose" – which is not defined within the statutes – forms the basis for Decker's argument that the statute is unconstitutionally vague.

¶21. This case was prosecuted by – and the appeal has been presented by – the Attorney General's office. At oral argument, the assistant attorney general argued that any use of a vulnerable person's money for personal benefit would be an improper use, even with the vulnerable person's consent. So we must accept that interpretation as to how citizens are to be prosecuted under the statute.

¶22. Under Section 43-47-19 – as applied by the Attorney General, and as its terms are defined in Section 43-47-5 – a vulnerable adult cannot give a spouse permission to withdraw money from a checking account to buy herself a birthday present; or give one of her children or grandchildren permission to withdraw money to pay college tuition. According to the argument presented by the Attorney General's office, both these actions would constitute crimes.

¶23. We are troubled by the statute's broad reach. But because we have decided this case based on the conflict between the language of the indictment and the jury instruction, we decline to address today the constitutionality of the statute.

## CONCLUSION

¶24. The trial judge gave a jury instruction that materially changed the charge made by the grand jury in the indictment. Accordingly, we must reverse and render the judgments of the Circuit Court of Clay County and the Court of Appeals.

¶25. **REVERSED AND RENDERED**.

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. CHANDLER AND KING, JJ., NOT PARTICIPATING.**