IRVING, P.J., for the Court:
¶ 1. On November 17, 2011, a Rankin County jury convicted Clarence Jones of capital murder, petit larceny, and motor-vehicle theft. The circuit court sentenced him to life for the capital-murder conviction, six months’ imprisonment for the pet-it-larceny conviction, and ten years’ imprisonment for the motor-vehicle-theft conviction, with the sentences for the pet-it-larceny conviction and the motor-vehicle-theft conviction to run concurrently with the sentence for the capital-murder conviction, in the custody of the Mississippi Department of Corrections, without eligibility for parole or probation. Jones filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which the circuit court denied.
¶ 2. Feeling aggrieved, Jones appeals and argues that the circuit court erred in denying his motion to suppress the statements that he gave to law enforcement officials and in giving a jury instruction *422 that allegedly required him to prove his innocence.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. On February 28, 2011, Rankin County law enforcement officials arrested Jones, Jerry Durr, and Trammel Warren for the murder of Stephen Johnson. Jones eventually gave three statements to police indicating that he had some involvement in Johnson’s death.
¶ 5. Jones gave his first statement to law enforcement officials on February 28, 2011, shortly after his arrest. During Jones’s first statement, he told officers that he had a tenth-grade education. Investigator Tim Lawless, with the Rankin County Sheriffs Department, read Jones his rights. Jones indicated that he understood his rights and signed a waiver-of-rights form. He initially indicated that he vaguely knew Johnson through Durr, but had never been to Johnson’s home and had not seen Johnson in approximately two years. Investigator Lawless told Jones that Durr had confessed to killing Johnson and had also stated that Jones was with him during the murder. When confronted with Durr’s statement, Jones said: “I can’t let him go down for murder by [himself].... I’ll just say I was with him.” Later, after Investigator Lawless asked Jones about a female being involved, Jones responded that he was not aware of a female being involved and stated: “But I will say, even though I’m lying, I was with him.” During this first statement, Investigator Lawless also explained the difference between the possible punishments for “murder” and “accessory.” Investigator Lawless stated: “Murder’s one thing. Accessory’s another. Murder can put you away, can get you the lethal injection — in Rankin County, especially. Or accessory might get you a little ... time in the jail.”
¶ 6. Jones provided a second statement — written this time — on February 24, 2011, the day following his arrest. Investigator Wayne Humphreys, with the Rankin County Sheriffs Department, showed Jones a waiver-of-rights form and told Jones that his rights were the same as they were when he gave his previous statement. Investigator Humphreys gave Jones a sheet of paper to provide a written statement. After Jones completed his written statement, he explained to Investigator Humphreys that Warren had Johnson in a choke hold the last time that he saw Johnson alive. When he and Durr put Johnson in the back of the truck, he did not think that Johnson was dead but thought that Johnson was unconscious as a result of Warren’s assault. Further, although he did not know Johnson very well, he went along with the plan because he thought that Johnson had some money hidden inside his home.
¶ 7. On March 2, 2011, Jones volunteered a third statement. Investigators Humphreys and Lawless were present during this statement. Investigator Hum-phreys explained that while the court had assigned an attorney to Jones for his preliminary hearing, that attorney no longer represented him. Investigator Hum-phreys also explained that Jones was still entitled to have an attorney present during any statement that he made to law enforcement officers. Jones indicated that he did not need an attorney. Investigator Humphreys read Jones his rights, and Jones signed the waiver-of-rights form.
¶ 8. In his third statement, Jones stated that Durr woke him and said that they were going to go “hit a lick.” When Jones asked “who,” Durr named Johnson as their target. Jones, Durr, and Warren traveled to Johnson’s home in Warren’s car. When the trio reached Johnson’s home, they noticed that Warren’s car had a flat tire. *423 They nevertheless decided to proceed with the plan. Jones revealed that Johnson would not let them inside the home at first, but Warren kicked in the door. Jones admitted that he hit Johnson a couple of times. He also admitted to sitting on Johnson’s chest to make sure that he did not move while Warren and Durr searched Johnson’s house for money. Jones also searched the home for money, found nothing, and decided to go outside with Warren and change the flat tire on Warren’s car. When he went outside, Johnson was still alive, and Durr was still questioning Johnson about the location of the money. While Jones was outside trying to change the flat tire on Warren’s car, Durr came outside and told Jones and Warren that he had killed Johnson. Durr had the keys to Johnson’s truck. Jones and Durr loaded Johnson’s body into Johnson’s truck and drove to Pelahatchie, Mississippi, to dump Johnson’s body. After they dumped the body, they drove back to Jackson. Jones stated that he “just want[ed] this murder off [him because he] did not kill [Johnson].” Investigator Lawless advised Jones that when his family hired a lawyer for him, he should talk to someone in the district attorney’s office to see if they would work with him.
¶ 9. At the suppression hearing, Investigator Lawless testified that he discussed the difference between accessory and murder with Jones during the first interview. He stated that he explained the difference between the two because he wanted Jones to understand the kind of charges that he could be facing. During cross-examination, Investigator Lawless stated that he had told Jones that if he just “passed a couple licks” he could be charged as an accessory. Investigator Lawless also admitted that he had told Jones during one of the earlier interviews that it would not look good to the judge if he did not cooperate.
¶ 10. Jones testified that he only had an eighth-grade education, even though he told officers that he had a tenth-grade education. Jones noted that he had been arrested before but had never been read his Miranda[1] rights, and he had never read them for himself. He stated that he was led to believe that he would be charged as an accessory, although Investigator Lawless never promised that he would be charged as an accessory. Jones admitted that the investigators did not coerce him, make promises to him, or threaten him. The court determined that the law enforcement officers had not acted improperly and that Jones had given his statements voluntarily.
¶ 11. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Motion to Suppress

¶ 12. Jones argues that the circuit court erred in denying his motion to suppress his statements to law enforcement officers. “[Appellate courts] will reverse a [circuit] court’s ruling on a motion to suppress ‘if the incorrect legal principle was applied; if there was no substantial evidence to support a voluntary, knowing, and intelligent waiver of Miranda rights; and if the denial was a result of manifest error.’ ” Redmond v. State, 66 So.3d 107, 111 (¶ 12) (Miss.2011) (quoting Scott v. State, 8 So.3d 855, 861 (¶ 22) (Miss.2008)). The Mississippi Supreme Court has stated:
For a confession to be voluntary, it must have been freely given and must not be the product of coercion by threats, *424 promises, or inducements. The State bears the burden to prove a confession was voluntary. Voluntariness may be established through testimony from officers or those who may have specific knowledge of the facts that the confession was made without any threats, offers of reward, or coercion. This testimony establishes a prima facie case of voluntariness. Then, the defendant may rebut the testimony with contrary evidence; whereupon the State must offer the testimony of all officers who witnessed the confession, or give an adequate reason for their absence.
Harden v. State, 59 So.3d 594, 605 (¶ 25) (Miss.2011) (internal citations omitted).
¶ 13. Here, there is substantial evidence to support the circuit court’s decision that Jones gave his statements voluntarily. The officers that were present during Jones’s statements testified that they did not coerce him, make promises to him, or threaten him. Jones received Miranda warnings prior to giving each statement. Jones never indicated that he did not understand his rights or that he did not want to talk to the officers. In fact, Jones initiated the third interview with officers because he thought that it would help him avoid a murder conviction. Also, Jones testified that the officers made no promises to him. Additionally, even though Investigator Lawless admitted that he told Jones that it would not look good to the court if he did not cooperate, this statement did not influence Jones’s decision to confess his role in Johnson’s death. Jones chose to confess his involvement in the crime because he did not want Durr to “go down for murder by [himself].” Therefore, it was, initially, his loyalty to Durr and not any statement by law enforcement officers that moved Jones to confess his involvement in Johnson’s murder. He later revealed his complete involvement in the crime out of fear of being charged, tried, and sentenced for capital murder, and he did so voluntarily. Accordingly, this issue is without merit.

II. Instruction S-lA

¶ 14. Jones argues that the circuit court erred in giving jury instruction S-lA because it impermissibly shifted the burden of proof to Jones to prove his innocence. Appellate courts review jury instructions as a whole to determine whether the jury was properly instructed on the applicable law. Flowers v. State, 51 So.3d 911, 912 (¶ 5) (Miss.2010). Instruction S-1A reads, in pertinent part:
The [c]ourt instructs the [j]ury that if you unanimously find that the State has failed to prove all the elements of the crime of capital murder, you may then proceed in your deliberations to consider the lesser charge of murder. However, it is your duty to accept the law given to you by the [e]ourt; and if the facts and the law warrant a conviction of the crime of capital murder, then it is your duty to make such a finding, and not be influenced by your power to find a lesser offense.
¶ 15. We first note that Jones’s challenge to instruction S-lA is procedurally barred. It is well settled that in order “[t]o preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the [circuit] court to consider the issue.” Boyd v. State, 47 So.3d 121, 124 (¶ 10) (Miss.2010) (quoting Harris v. State, 861 So.2d 1003, 1013 (¶18) (Miss.2003)). Additionally, “an objection on one or more specific grounds constitutes a waiver of all other grounds.” Killen v. State, 958 So.2d 172, 186 (¶ 56) (Miss.2007) (quoting Morgan v. State, 741 So.2d 246, 253 (¶ 15) (Miss.1999)). The record reflects that Jones objected to a preceding paragraph *425 in instruction S-1A concerning the addition of language regarding aiding and abetting. However, Jones did not object to instruction S-1A on the ground that the instruction impermissibly shifted the burden of proof to him to prove his innocence. Accordingly, Jones’s challenge to instruction S-1A on this ground is procedurally barred.
¶ 16. Procedural bar notwithstanding, Jones’s argument is without merit. Our supreme court has previously approved an instruction identical to instruction S-1A. In Fulgham v. State, 46 So.3d 315, 330 (¶ 40) (Miss.2010), the court reiterated that an “acquit-first instruction,” like instruction S-1A, is not prohibited by Mississippi law. Jones contends that this instruction is analogous to the instruction erroneously given by the circuit court in Banyard v. State, 47 So.3d 676, 684 (¶ 21) (Miss.2010), which instructed the jury as follows: “if you unanimously find beyond a reasonable doubt that the Defendant is NOT GUILTY of either ‘Capital Murder’ or ‘Murder,’ then the verdict shall be in the following form.... ” (Emphasis added). Our supreme court determined that the instruction was erroneous because it misstated the State’s burden in proving the defendant’s guilt.
¶ 17. However, instruction S-1A is significantly different from the Banyard instruction. While it is an acquit-first instruction, instruction S-1A did not shift the burden to Jones to prove his innocence. Instead, the instruction reminded the jury that the State carried the responsibility to prove every element of the top count — capital murder — and that if the State failed to prove any element of capital murder, then the jury could consider the lesser crime of simple murder. Accordingly, the circuit court did not err by giving instruction S-1A to the jury.
¶ 18. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CAPITAL MURDER, AND SENTENCE OF LIFE; COUNT II, PETIT LARCENY, AND SENTENCE OF SIX MONTHS; AND COUNT III, MOTOR-VEHICLE THEFT, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY WITH EACH OTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).