# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00748-COA

**DENNIS THOMPSON A/K/A NUCY A/K/A RAY RAY A/K/A DENNIS RAY THOMPSON**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

DATE OF JUDGMENT:              07/31/2014
TRIAL JUDGE:                   HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:     COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        DANIEL CHRISTOPHER JONES
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: KAYLYN HAVRILLA MCCLINTON
DISTRICT ATTORNEY:             BRENDA FAY MITCHELL
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 04/10/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Dennis Thompson appeals his conviction for murder; finding no reversible error, we affirm.

¶2.    On December 8, 2009, Thompson was indicted for one count of conspiracy to commit robbery and one count of capital murder. On February 24, 2014, a jury trial commenced in the Circuit Court of Coahoma County. During trial, Thompson requested that the jury be instructed to consider simple murder in the event they found him not guilty of conspiracy to commit robbery. On the morning of February 27, 2014, the jury retired to deliberate. Following deliberations, the jury unanimously found Thompson not guilty for conspiracy to

commit robbery. However, the jury was unable to reach a verdict regarding capital murder. While the jury was unanimous that Thompson was not guilty of the underlying felony of robbery, the jury was deadlocked on the lesser-included offense of murder, for which it was instructed to consider per Thompson's request. After ascertaining that the jury was hopelessly deadlocked, the trial court ordered a mistrial on count two and held that Thompson's retrial be limited to the lesser-included offense of murder.

¶3. Thompson's retrial commenced on July 29, 2014. After deliberating, the jury unanimously found Thompson guilty of murder. Thompson now appeals, asserting the weight and sufficiency of the evidence do not support his conviction; the trial court erred by admitting unreliable witness testimony; his retrial violated his protection against double jeopardy; and his indictment for capital murder was insufficient for the purpose of retrying him for murder.

**FACTS AND PROCEDURAL HISTORY**

¶4. On December 8, 2009, a Coahoma grand jury indicted Thompson for count one, conspiracy to commit robbery in violation of Mississippi Code Annotated section 97-3-73 (Rev. 2006), and count two, capital murder in violation of Mississippi Code Annotated section 97-3-19(2)(e) (Rev. 2006). During his first trial, Thompson requested that, "if the [c]ourt rules on behalf of [Thompson] that conspiracy has not been established by the State, then [he] would move that Count II, as far as capital murder, be downgraded to simple murder. Because the underlying felony is conspiracy to commit robbery." The jury was accordingly instructed that in the event they found Thompson not guilty of capital murder,

2

they were to consider simple murder.

¶5.    The jury found Thompson not guilty on count one, conspiracy to conspiracy to commit robbery. However, the jury was unable to reach an agreement on count two, capital murder. Although the jury was unanimous that Thompson was not guilty of the underlying felony of robbery, the jury was deadlocked on the lesser-included offense of murder. The trial court ordered a mistrial and held that the State "not be permitted to retry the [D]efendant on a charge of capital murder, but will be limited to the charge of murder."

¶6.    On July 29, 2014, Thompson's retrial for the lesser-included offense of murder commenced. Shemeka Palmer was the State's first witness. Palmer testified that on November 30, 2008, she was visiting Clarksdale for work and had reserved a hotel room at the Comfort Inn. She stated that on that evening, Carlos Buford, with whom she was a childhood friend, was driving to meet her at the hotel. Palmer said Buford called her at approximately 7:00 or 8:00 p.m. from a Double Quick store in Clarksdale to ask her for directions to the hotel, but he never arrived at the hotel.

¶7.    Next, Stephen Poer, a former Clarksdale Police Department patrolmen testified. Poer testified that while he was on duty on November 30, 2008, he was called to investigate a person sitting in a parked car near the Hicks Motel. Poer said that he arrived at the scene sometime between 8:00 and 9:00 p.m. and that upon his arrival, he found the body of a deceased man, later identified as Buford, sitting in the driver's seat. Buford's head was against the headrest of the seat, and blood was coming from the back of his head. The driver's door was open, and the engine was still running. Poer testified he secured the scene

without disturbing any evidence.

¶8. Captain Ulyda Johnson of the Clarksdale Police Department was the next State's witness to testify. Captain Johnson stated that in November 2008, she was a detective with the Clarksdale Police Department and was the chief investigator in Buford's case. She said that on November 30, 2008, at approximately 9:20 p.m., she responded to a dispatcher call in the area near the Hicks Motel. When she arrived, Captain Johnson said she saw Buford's body in the driver's seat of a parked vehicle. She photographed the scene and accompanied the Coahoma County Coroner to the morgue to photograph Buford's body. While at the morgue, the coroner gave Captain Johnson a phone number collected off Buford's body. Captain Johnson called the number and discovered it belonged to Palmer. She then met Palmer at the Comfort Inn, where Palmer was staying. Captain Johnson obtained a statement from Palmer and was headed back to the office when she received a call from an informant. The informant provided the names of several people: Isaiah Johnson, Eddie Johnson, and Cheesy Hollins. Isaiah, Eddie, and Cheesy gave Captain Johnson statements and information about a person of interest, Danny Starks. Cheesy provided a recorded phone call, from which Captain Johnson developed two suspects: David McLymont and Thompson. Captain Johnson also brought Starks in for questioning and asked him to look at two photo lineups she had prepared. Starks viewed the lineups and identified McLymont and Thompson as people he recognized. Under McLymont's photo, Starks wrote "front seat," and under Thompson's, he wrote "this is the guy I saw with the gun." As a result, warrants were issued for both McLymont and Thompson. Both men were arrested, and their fingerprints were sent to the

crime lab.

¶9.    Several experts testified for the State. Dr. Feng Li, an expert physician in the field of anatomical, clinical, and forensic pathology, testified that he performed Buford's autopsy and recovered a bullet from Buford's head. Dr. Li stated that Buford died of a penetrative gunshot wound to the head. Kristopher Wingert, an expert crime scene analyst with the Mississippi Bureau of Investigation, processed the finger prints and contents of the vehicle. Wingert stated that a copper jacket[1] was found on the floorboards of Buford's car. Starks Hathcock, an expert forensic scientist specializing in firearms identification and examination, identified the copper jacket as bearing similar characteristics to a .40-caliber bullet. Hathcock also analyzed the bullet recovered from Buford's brain and determined it bore similar characteristics to a .38-caliber bullet. Mike Hood, an expert forensic scientist specializing in latent fingerprints, testified that McLymont's fingerprints were found on the front passenger's door of Buford's car.

¶10.    Derrick Noah, a Coahoma County Jail inmate, also testified for the State. Noah testified that he was acquainted with Thompson prior to his imprisonment and had the opportunity to speak to Thompson while they were both housed in the Coahoma County Jail. Noah stated that in one conversation, Thompson told him he was in jail because of a gun he bought from a mutual acquaintance. Noah recalled that the gun Thompson bought from the acquaintance was a .38-caliber revolver. Noah said that in another conversation, Thompson

---

[1] Some bullets have an outer copper jacket that encases the projectile (the part of the bullet expelled from the gun). Wingert stated copper jackets tend to peel apart from the projectile.

5

told him that he, McLymont, and Starks were at a Double Quick and came across a man wearing a chain-link necklace with a medallion. Thompson told Noah he wanted the medallion and started talking to the man, who allegedly asked about purchasing some marijuana. Thompson responded that they could get the marijuana, but they needed a ride from the Hicks Motel to get it. Thompson, McLymont, and Starks got into the man's car. Thompson sat in the rear passenger seat, McLymont was in the front passenger seat, and Starks was seated behind the man. According to Thompson, as McLymont got out of the car, he reached for the man's necklace, and the man shot McLymont in the leg with a .40-caliber gun. Thompson told Noah that after the man shot McLymont, he shot the man in the back of the head. Thompson also told Noah that he was wearing gloves so as to not leave fingerprints at the scene. Thompson said that he hid in the bushes behind the Hicks Motel "until the coast was clear."

¶11. Following these conversations with Thompson, Noah wrote the district attorney's office. Noah said he decided to share the information with the State because Thompson had threatened him and his family.

¶12. Starks was the State's last witness. Starks testified that he met Thompson and McLymont (Thompson's cousin), while he was living in Clarksdale. He stated that on the evening of November 30, 2008, McLymont and Thompson met him at his house, and the three of them left to walk to a club together. On the way to the club, they came across a Double Quick. Thompson went into the store while Starks and McLymont waited outside. Thompson engaged in a conversation with another man (later determined to be Buford)

6

inside the store. Starks said he heard Thompson ask Buford about a ride. Starks testified that he, Thompson, and McLymont got in Buford's car, and that as they were driving by the Hicks Motel, McLymont, who was seated in the front passenger seat, began wrestling with Buford. Starks said he was seated in the backseat, behind Buford, and Thompson was seated next to him. Starks stated that a shot rang off, and then he saw Thompson reach for his leg, pull out a gun, and shoot Buford in the back of the head. Starks confirmed he later spoke to law enforcement and that he identified McLymont as the front seat passenger, and Thompson as the man with the gun.

¶13. After Starks's testimony, the State rested, and Thompson moved for a directed verdict of acquittal, which the court denied. Next, Thompson's first witness, Andrinis Foster (Thompson's cousin), testified. Foster testified that in November 2008, she was in a romantic relationship with Starks, and that on the evening of November 30, 2008, Starks visited her home and told her he had "somebody else's blood" on him. Foster said she did not ask whose blood it was. Thompson's second witness was his sister, Denetria Thompson. Denetria testified that on the night of November 30, 2008, Thompson was with her and their father all night and therefore did not commit the charged crime. Thompson's final witness, Raechele Scott, was a jail administrator at the Coahoma County Sheriff's Department. Scott testified that Thompson and Noah were housed in separate parts of the jail. However, she also stated that during certain times, inmates are able to move around within their shared pod and speak with other inmates and that it was possible for an inmate assigned to a specific cell to visit another cell.

7

¶14. After Thompson presented his witnesses, he renewed his motion for a directed verdict, which the trial court denied. Following closing arguments, the jury deliberated and unanimously found Thompson guilty of murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2006). Thompson was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Thompson timely appealed.

## DISCUSSION

**I.    Denial of Thompson's Motion for a Judgment of Acquittal Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial**

¶15. On appeal, Thompson argues that the jury's verdict should not have been allowed to stand and that the trial judge should have granted either Thompson's judgment notwithstanding the verdict, or his motion for a new trial.

¶16. The denial of a motion for a judgment notwithstanding the verdict (JNOV) challenges the legal sufficiency of the evidence, while the denial of a motion for a new trial challenges the weight of the evidence. *Brown v. State*, 796 So. 2d 223, 225 (¶5) (Miss. 2001).

### a.    Sufficiency of the evidence

¶17. In considering whether the evidence is legally sufficient to sustain a conviction, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Russell v. State*, 924 So. 2d 604, 608 (¶8) (Miss. Ct. App. 2006). "The key question in this analysis is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

8

of the crime beyond a reasonable doubt." *Id.* (quotation marks omitted) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (abrogated on other grounds)).

¶18.   It is important to note that this review does not require the Court to

> ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)) (emphasis in original). If the Court should determine that the facts are not sufficient to support the verdict, then the "proper remedy is for the appellate court to reverse and render." *Id.*

¶19.   In order to prove Thompson committed murder, the evidence must show that Thompson: (1) killed Buford (2) without authority of law but with (3) the deliberate design to effect his death. Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014); *Brown v. State*, 965 So. 2d 1023, 1030 (¶27) (Miss. 2007). On appeal, Thompson argues he shot Buford in order to protect McLymont and that "at best[,] [he] should have been charged with manslaughter." Thompson did not raise these theories at trial and did not request a manslaughter instruction. Therefore, he cannot raise these issues on appeal. *Ealey v. State*, 158 So. 3d 283, 293 (¶37) (Miss. 2015). Thompson also argues the State "did not offer any testimony as to the deliberate design of [his] actions."

¶20.   "Deliberate design" is synonymous with "malice aforethought" and connotes an intent to kill. *Wilson v. State*, 936 So. 2d 357, 363-64 (¶17) (Miss. 2006). "Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of

9

consummating the intent." *Brown*, 965 So. 2d at 1030 (¶28) (quoting *Windham*, 520 So. 2d at 127)). It is well established that "[m]alice, or deliberate design, may be inferred from the use of a deadly weapon." *Anderson v. State*, 79 So. 3d 501, 507 (¶22) (Miss. 2012) (quoting *Phillips v. State*, 794 So. 2d 1034, 1037 (¶11) (Miss. 2001)).

¶21. During trial, Starks testified for the State. Starks said that he observed Thompson pull out a gun and shoot Buford in the back of the head. Starks stated that at the time of the shooting, Buford was sitting in the driver's seat, and Thompson was sitting in the back-right passenger seat. Experts for the State testified that Buford died of a penetrative gunshot wound to the right side of the back of his head, and that the bullet recovered from Buford's head was a .38-caliber bullet.

¶22. Noah, an inmate imprisoned with Thompson in the Coahoma County jail, also testified for the State. Noah testified that during his imprisonment, he had the opportunity to talk with Thompson; that Thompson told him he was in jail due to a .38-caliber gun, bought from a mutual acquaintance; and that Thompson said he shot the victim in the back of the head.

¶23. In considering the evidence in the light most favorable to the prosecution, we find the evidence sufficient for the jury to conclude Thompson killed Buford with deliberate design. Accordingly, this issue is without merit.

### b. *Weight of the evidence*

¶24. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an

10

unconscionable injustice." *Bush*, 895 So. 2d at 844. In determining whether the weight of the evidence supports the verdict, this Court weighs the evidence in the light most favorable to the verdict. *Id.* The motion is addressed to the sound discretion of the court; a new trial should be granted only in exceptional cases when the evidence preponderates heavily against the verdict. *Id.* (citing *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 947 (¶18) (Miss. 2000)).

¶25.    Thompson argues that allowing his conviction to stand would be an unconscionable injustice because he was retried for simple murder on a capital murder indictment. As this argument challenges the sufficiency of Thompson's indictment, we address it below, under Thompson's third assignment of error. For the same reasons we found the evidence in this case to be sufficient, we also find that allowing Thompson's murder conviction to stand does not sanction an unconscionable injustice. Accordingly, this contention of error is without merit.

**II.    Starks's and Noah's testimonies**

¶26.    Thompson alleges the trial court erred by allowing Starks and Noah to testify because their testimonies were unreliable. To support his argument, Thompson cites a string of authority regarding the inherent unreliability of testimony given by accomplices and jailhouse snitches. In doing so, Thompson suggests a cautionary instruction should have been given to warn jurors that accomplice or snitch testimony should be viewed with suspicion.

¶27.    We note, after thorough review of the record, that there is no evidence indicating that Starks was charged as an accomplice, nor is there any evidence suggesting Starks made any

deals with law enforcement or prosecutors in exchange for his testimony. Further, Thompson did not request a cautionary instruction as to Starks's testimony, and his failure to do so serves as a bar to raising the point on appeal. *Carr v. State*, 655 So. 2d 824, 837 (Miss. 1995). As to Noah's testimony, Thompson requested a cautionary instruction regarding "jailhouse informants."[2] The trial court refused Thompson's requested instruction, but it gave the following instruction, C-20:

> The law provides that testimony received from an inmate or jailhouse informant who has received some benefit by providing such testimony should be viewed with suspicion and distrust. If you find the witness Derrick Noah to be such an inmate or jailhouse informant, then, in determining what weight, if any, you will give such testimony, you should do so with great care and caution.

¶28.    Jury instructions are not reviewed in isolation, but are read as a whole to determine if the jury was properly instructed. *Milano v. State*, 790 So. 2d 179, 184 (¶14) (Miss. 2001). The instructions must fairly announce the law of the case and not create injustice. *Id.* "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.* While a defendant has a right to present his theory of the case, that right is not absolute, and trial courts "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions[,] or is without foundation in the evidence." *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009).

¶29.    Here, the trial court granted a cautionary instruction that advised the jury to view informant testimony with caution and suspicion. We find the instructions taken as a whole

---

[2] We note that the text of Thompson's proposed instruction does not appear in the record.

fairly announced the applicable law and sufficiently cautioned the jury. Further, any inherent unreliability in either Starks's or Noah's testimony was brought out on cross-examination by Thompson's attorney, and the jury was instructed to carefully weigh the credibility of all the witnesses. Thus, we find no error.

### III. Retrial

¶30. Following Thompson's first trial, the jury found Thompson not guilty on count one, conspiracy to commit robbery. However, the jury was unable to reach a verdict on count two, capital murder. Although the jury was unanimous that Thompson was not guilty of the underlying felony of robbery, it was deadlocked on the lesser-included offense of murder. The trial court ordered a mistrial and held that the State "not be permitted to retry the defendant on a charge of capital murder, but will be limited to the charge of murder." After retrial, Thompson was convicted of murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2006).

¶31. On appeal, Thompson claims his second trial for simple murder violated double jeopardy. Thompson also argues his indictment for capital murder was not sufficient to try him for simple murder. Because a double jeopardy violation and the sufficiency of an indictment are separate issues, we address each in turn.

#### a. *Double jeopardy*

¶32. We note that Thompson makes his argument concerning double jeopardy for the first time on appeal. However, as the protection against double jeopardy is a fundamental right, we will not apply a procedural bar and will address the merits of Thompson's claim. *Fuselier*

13

*v. State*, 654 So. 2d 519, 522 (Miss. 1995) (holding that, while constitutional questions not raised at trial are generally deemed waived, errors affecting fundamental constitutional rights may be excepted from procedural bars which would otherwise prohibit consideration). We review claims of double jeopardy de novo. *Goforth v. State*, 70 So. 3d 174, 187 (¶60) (Miss. 2011).

¶33.    Article 3, section 22 of the Mississippi Constitution states, "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22 (1890). Thus, when a defendant has pled guilty, been convicted, or acquitted by a jury, his double jeopardy right has fully accrued. *Beckwith v. State*, 615 So. 2d 1134, 1147 (Miss. 1992). However, when a mistrial is granted upon the court's own motion, or the state's motion, a second trial is not barred due to double jeopardy when, taking all the circumstances into consideration, there was a manifest necessity for the mistrial. *Watts v. State*, 492 So. 2d 1281, 1284 (Miss. 1986). "Manifest necessity" means that, following the attachment of double jeopardy, a "high degree" of necessity is required to conclude a mistrial is appropriate. *Conwill v. State*, 94 So. 3d 1173, 1177 (¶19) (Miss. Ct. App. 2011). It is well settled that a hopelessly deadlocked jury is a manifest necessity for a mistrial. *See, e.g.*, *Beckwith*, 615 So. 2d at 1148; *Jones v. State*, 398 So. 2d 1312, 1315 (Miss. 1981).

¶34.    Here, the judge granted a mistrial because the jury was hopelessly deadlocked. Accordingly, Thompson's subsequent retrial did not violate his right against double jeopardy.

        b.      *Sufficiency of the indictment*

14

¶35. The purpose of an indictment is to satisfy the constitutional requirement that a "defendant be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI; Miss. Const. art. 3, § 26. *See also* URCCC 7.06 (An indictment must include a "plain[,] concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation."). Furthermore, "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007)).

¶36. The record reflects that count two of Thompson's indictment for capital murder charged:

> [O]n or about November 30, 2008 . . . [Thompson] individually or while aiding and abetting and/or acting in concert with another and/or others, did unlawfully, wilfully, feloniously and without the authority of law and with or without the deliberate design to effect death, kill and murder Carlos Deon Buford, a human being, while [Thompson] and another or others were engaged in the commission of the crime of robbery as set forth in the Mississippi Code of 1972, Annotated as amended, Section 97-3-73, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi.

Thus, review of Thompson's indictment shows that (1) the essential elements of murder were encompassed within the capital murder charge; (2) Thompson was provided with sufficient facts to fairly inform him of the charge he had to defend against; and (3) Thompson was given sufficient facts enabling him to plead double jeopardy in a prosecution for the same

15

offense.

¶37. Further, a defendant in a criminal case can be found guilty of a lesser-included offense, so long as it is necessarily a lesser-included offense of the offense charged. Mississippi Code Annotated section 99-19-5 (Rev. 2007) provides:

> On an indictment for any offense, the jury may find the defendant guilty of the offense charged, or any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is *necessarily included* in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, *without any additional count in the indictment for that purpose*.

Miss. Code Ann. § 99-19-5 (Rev. 2007) (emphasis added).

¶38. It is well established that murder is a lesser-included offense of capital murder. *See Spicer v. State*, 921 So. 2d 292 (Miss. 2006); *Dockery v. State*, 96 So. 3d 759 (Miss. Ct. App. 2012); *see also Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988). Thompson thus had statutory notice that his indictment for capital murder could result in a conviction for the lesser-included offense of murder. Moreover, section 99-19-5 provides that a jury may convict a defendant of a lesser-included offense without an additional count in the indictment. Therefore, Thompson's retrial and conviction of the lesser-included offense of murder was not reversible error. Nor was it even error.

¶39. The dissent compares this case to *Ashwell v. State*, stating, "without a prosecution on the indictment, the record on appeal lacks evidence in Thompson's second trial and resulting conviction to show that the prosecution was brought in the State of Mississippi's name and authority." However, the facts in *Ashwell* significantly differ from those in the case sub judice. In *Ashwell*, the record was completely devoid of *any* charging document for either of

16

the crimes to which Ashwell pled guilty. *Ashwell v. State*, 226 So. 3d 69, 73 (¶18) (Miss. 2017). The docket sheet in each criminal case reflected that no charging document was filed with the circuit court, and the criminal files themselves did not include any charging documents either. *Id.* at 72 (¶12). Accordingly, the Supreme Court found that the State never charged Ashwell with a crime, and the circuit court lacked jurisdiction and authority to accept Ashwell's guilty pleas. *Id.* at (¶14). Here, Thompson's indictment charging him with capital murder was filed on December 8, 2009. The dissent thus extends *Ashwell*'s holding by implying the record on appeal is lacking when a defendant is retried for a lesser-included offense that was not in a separate count of the indictment. *Ashwell* did not address that issue, and as discussed above, section 99-19-5 does not require that a lesser-included offense be charged in a separate count in the indictment.

¶40. The second case cited by the dissent, *Decker v. State*, is also distinguishable from the instant case. Decker was indicted under the Mississippi Vulnerable Adults Act of 1986 for using her mother's money "without her consent." *Decker v. State*, 66 So. 3d 654, 654 (¶1) (Miss. 2011). But at trial, the evidence established that Decker had obtained her mother's consent to use the money, so the State requested—and the trial judge granted—a jury instruction that allowed the jury to find Decker guilty, even if her mother had given her permission to use the money. *Id.* The supreme court found the jury instructions, when taken as a whole "created injustice by expanding beyond the charges in the indictment, the bases on which Decker could be convicted." *Id.* at 657 (¶15). As the court explained, "the wording of the indictment suggest[ed] that the grand jury believed Decker's use of the money was

17

improper only if the money was used without [her mother's] consent." *Id.* at 656 (¶9).

¶41. Here, there was no material deviation from the indictment. Thompson's capital murder charge notified him, for due process purposes, that he must also be prepared to defend against any lesser-included offense even if the lesser-included offense was not expressly set forth in the indictment. *See Wallace v. State*, 10 So. 3d 913, 917 (¶10) (Miss. 2009) ("[B]y its very definition, a defendant is always on notice of a lesser-included offense.").

¶42. The dissent again cites *Decker*, stating, "once the grand jury hands down a true bill that alleges an accused committed a particular crime by engaging in certain conduct—absent waiver or a request for a lesser[-]included offense—the accused must be prosecuted for that crime, and no other." *Decker*, 66 So. 3d at 656 (¶6). The dissent then states "[t]he facts here reflect that Thompson never requested the lesser-included offense during the subsequent trial." The facts do, however, reflect that Thompson requested consideration of the lesser-included offense during his first trial, and the jury was instructed thereon. *Decker* is silent on this issue, but *Gangl v. State*, 539 So. 2d 132 (Miss. 1989) provides instruction.

¶43. *Gangl* considered whether a request for a lesser offense (rather than a request for a lesser-included offense) carries over to retrial. In *Gangl*, the Mississippi Supreme Court considered whether an indictment for armed robbery could support a conviction for accessory after the fact, when the defendant requested a lesser offense instruction on accessory after the fact. *Id*. The Court found that "[b]y requesting the instruction, Gangl waive[d] any inadequacy or notice in the indictment," and thus, "the jury *on retrial* [could] convict [Gangl] of accessory after the fact even though that crime [was] not a lesser[-]included offense of the

18

charge laid in the indictment." *Id.* at 136 (emphasis added). Because a request for a lesser offense instruction applies to retrial, it logically follows that a request for a lesser-included offense should also apply to this retrial on the lesser-included offense of murder. Thus, Thompson's request waived any inadequacy or notice in the indictment, and his conviction for murder was proper.

**CONCLUSION**

¶44.    We find that the evidence was sufficient to convict Thompson of murder and the jury's verdict is not against the overwhelming weight of the evidence. Taken as a whole, the jury instructions fairly announced the applicable law and sufficiently cautioned the jury. Any unreliability in Starks's or Noah's testimonies was brought out on cross-examination, and the jury was instructed to carefully weigh the credibility of all of the witnesses. Thompson's retrial for murder following a mistrial due to a deadlocked jury did not violate double jeopardy. Thompson's request for a lesser-included offense instruction during his first trial waived any inadequacy or notice in his indictment. Further, section 99-19-5 put Thompson on statutory notice that the jury could convict him of any lesser-included offense, even if the lesser-included offense was not listed in a separate count of the indictment.

¶45.    **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR.   WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.**

**CARLTON, J., DISSENTING:**

¶46.    I respectfully dissent from the majority's opinion finding no error by the circuit court

in allowing the State to prosecute Thompson for first-degree, or deliberate-design, murder in violation of section 97-3-19(1)(a) without also prosecuting Thompson on the indicted offense of capital murder (felony murder) in violation of section 97-3-19(2)(e). Finding error by the circuit court, I would reverse Thompson's conviction and vacate his sentence.[3]

¶47. On December 8, 2009, a grand jury indicted Dennis Thompson for Count I, conspiracy to commit robbery in violation of Mississippi Code Annotated section 97-3-73 (Rev. 2006), and Count II, capital murder in violation of Mississippi Code Annotated section 97-3-19 (2)(e), with the underlying predicate felony of robbery. *See* Miss. Code Ann. §§ 97-1-1 (Rev. 2006) & 97-3-19(2)(e) (Rev. 2006). In Thompson's first trial, a jury found him not guilty of Count I, conspiracy to commit robbery, but deadlocked on Count II, capital murder (felony murder). The circuit court declared a mistrial as to the capital-murder charge. The circuit court also provided that the State could retry Thompson on the offense of deliberate-design murder but not the indicted offense of capital murder (felony murder). The instant appeal addresses Thompson's subsequent trial, wherein Thompson was tried for the offense of deliberate-design murder but not prosecuted or retried on the indicted offense. During the second trial, where the State prosecuted only deliberate-design murder and not the offenses charged in Thompson's indictment, a jury found Thompson guilty of first-degree (deliberate-design) murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2006).

---

[3] *See Hall v. State*, 127 So. 3d 202, 207 (¶17) (Miss. 2013) (reversing the defendant's conviction and vacating his sentence where he was convicted of a crime for which he was never indicted).

¶48. Following the circuit court's denial of his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, Thompson appeals. On appeal, he asserts the following issues: (1) the circuit court erred by denying his motion for a JNOV or, in the alternative, a new trial; (2) the circuit court erred by admitting into evidence threatening pretrial statements he made; and (3) the circuit court erred by allowing the State to retry him on the charge of simple murder without a new indictment.

¶49. I find dispositive Thompson's third assignment of error. The circuit court erred by allowing the State to prosecute Thompson for first-degree, or deliberate-design, murder in violation of section 97-3-19(1)(a) without also prosecuting Thompson on the indicted offense of capital murder (felony murder) in violation of section 97-3-19(2)(e). I would therefore reverse Thompson's conviction and vacate his sentence.[4] As previously addressed, pursuant to a multicount indictment, a grand jury indicted Thompson on December 8, 2009, for Count I, conspiracy to commit robbery in violation of section 97-3-73, and Count II, murder during the commission of a robbery, in violation of section 97-3-19(2)(e) (felony murder). At the conclusion of Thompson's first trial, the circuit court entered an order declaring a mistrial as to Count II. However, the circuit court prohibited the State from retrying Thompson on Count II of the indictment and provided that the State could only prosecute Thompson for a lesser-included offense of Count II. The State thereafter prosecuted Thompson for a lesser-included offense rather than for the offense in Count II of the indictment. The circuit court's order is contained in the record before us on our review of Thompson's second trial. I now

---

[4] *See Hall*, 127 So. 3d at 207 (¶17).

21

turn to the relevant facts set forth in the record before us, including the circuit court's order declaring a mistrial.

¶50.     At Thompson's first trial in February 2014, the circuit court instructed the jury on the indicted offenses of conspiracy and capital murder as well as the lesser-included offense of murder. The record reflects that, during its deliberations, the jury reported to the bailiff that it was unable to reach a decision. The court called the jury back into the courtroom to ask about the jury's numerical division. In response, the jury stated it was split 9-2, with one juror undecided. However, the record indicates that the jury did not specify whether the split applied to one or both counts charged in the indictment. After finding the jury's "split was not so divisive as to suggest that the jury was hopelessly deadlocked," the circuit court administered a *Sharplin*[5] charge and instructed the jury to continue deliberations.

¶51.     The record establishes that the jury once again reported that it remained unable to agree. The circuit court recalled the jury to the courtroom a second time and, through questioning, determined that the jury had reached a unanimous verdict of "not guilty" as to Count I, conspiracy to commit robbery. The foreperson informed the circuit court that the split within the jury as to Count II now totaled 10-2.

¶52.     The record shows that the jury once more returned to its deliberations as to Count II. For the third time, however, the jury reported that it remained unable to reach an agreement. Although the jury did not report a verdict as to Count II, the circuit court surmised from its colloquy with the jury that the jury's finding as to the capital-murder charge was adverse to

_____

[5] *See Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976) (identifying the instructions a trial court may give upon learning that a jury cannot reach a unanimous verdict).

22

the State. The circuit court also surmised that the jury was divided as to the lesser-included offense of murder. The circuit court directed the jury to continue its deliberations regarding Count II. After further deliberations, the jury yet again reported to the bailiff that it remained unable to reach agreement. The circuit court then declared a mistrial as to Count II.

¶53. The circuit court's order declaring a mistrial provided that, although the jury did not actually report a verdict as to Count II, based on the court's conversation with the jury and the difficulty the jury experienced in reaching a determination regarding the lesser-included offense of murder, the circuit court concluded that the jury's finding as to the capital-murder charge was adverse to the State. The circuit court's order declaring a mistrial provided the following directive: "As such, while the State will be permitted to retry the [D]efendant, such retrial will be limited to the charge of 'murder[,]' and the State will not be permitted to retry the [D]efendant on a charge of 'capital murder.'" Thus, as the record reflects, the circuit court declared a mistrial as to the indicted offense of Count II, capital murder, and the circuit court directed that the State could retry Thompson only on the lesser-included offense of murder.

¶54. The record further shows that, upon Thompson's subsequent trial in July 2014, in accordance with the circuit court's prior instruction, the State prosecuted Thompson only for the lesser-included offense of first-degree (deliberate-design) murder in violation of section 97-3-19(1)(a) and not for the actual indicted charge of felony murder in violation of section 97-3-19(2)(e). Thus, the record shows that, in the subsequent trial, Thompson was not prosecuted for the offenses charged in the indictment. After the jury found Thompson guilty

23

of first-degree murder, the circuit court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections, with the sentence to run consecutively to any and all sentences previously imposed. Thompson filed an unsuccessful motion for a JNOV or, in the alternative, a new trial. Aggrieved by his conviction and sentence, Thompson appeals.

¶55. In his recent concurrence in *Ashwell v. State*, 226 So. 3d 69, 77 (¶27) (Miss. 2017), Justice Kitchens explicitly stated that an indictment is essential to show a prosecution is carried out in the State of Mississippi's name and authority. *See also* Miss. Const. art. 6, § 169 ("[A]ll prosecutions shall be carried on in the name and by authority of the 'State of Mississippi[.]'"). Justice Kitchens further explained that "[t]he charging document in a criminal case establishes that the prosecution is brought in the name of the State, an indispensable prerequisite" to a felony prosecution. *Ashwell*, 226 So. 3d at 77 (¶27) (Kitchens, J., concurring). In the present case, as in *Ashwell*, without a prosecution on the indictment, the record on appeal lacks evidence in Thompson's second trial and resulting conviction to show that the prosecution was brought in the State of Mississippi's name and authority. In the subsequent trial, the State failed to prosecute Thompson for the crime charged in Count II of the indictment. Instead, the State prosecuted Thompson only for a lesser-included offense. As Justice Kitchens acknowledged in *Ashwell*, the indictment's absence leaves a defendant unable to plead double jeopardy in a future prosecution for the same or similar offenses. *Id.* Justice Kitchens also explained that an indictment constitutes a prerequisite to the State's ability to prosecute a felony unless the defendant waives the

indictment and consents to proceeding by information. *Id.* at 75 (¶24).

¶56. With regard to the present case, no dispute exists that deliberate-design murder constitutes a lesser-included offense of capital murder. However, prosecution on the indictment is a prerequisite to obtaining a conviction for a lesser-included offense. Of course, the jury may be instructed upon all lesser-included offenses of that indicted offense that are supported by the evidence.[6] The majority relies on *Gangl v. State*, 539 So. 2d 132 (Miss. 1989), for its position that Thompson waived any challenges to notice or inadequacy in the indictment. However, *Gangl* is inapplicable to the facts of the present case. In *Gangl*, the State prosecuted the defendant on the charged indictment. *Id.* at 134. At trial, Gangl then requested a lesser-nonincluded-offense instruction, which the trial court refused. *Id.* On appeal, the Mississippi Supreme Court found Gangl waived any challenges to the inadequacy or notice in the indictment by requesting the lesser-nonincluded-offense instruction. *Id.* at 136.[7] By contrast, in the present case, Thompson never requested a lesser-included-offense instruction or a lesser-nonincluded-offense instruction during his subsequent trial.

¶57. Our supreme court recognizes that, "once the grand jury hands down a true bill that alleges an accused committed a particular crime by engaging in certain conduct—absent

---

[6] *See* Annotation, *When Should Jury's Deliberation Proceed from Charged Offense to Lesser-Included Offense*, 26 A.L.R. 603 (5th ed. 1995) (providing that the jury should be instructed to first discuss whether the elements of the indicted or main offense are satisfied before turning to consider the lesser offenses).

[7] I acknowledge that, in *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015), the supreme court held "a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses [that] are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions."

25

waiver or a request for a lesser[-]included offense—the accused must be prosecuted for that crime, and no other." *Decker v. State*, 66 So. 3d 654, 656 (¶6) (Miss. 2011). As set forth in *Decker*, upon retrial, the State was required to prosecute Thompson for the offense charged in the indictment absent a waiver or a request for a lesser-included offense. *See id.*[8] The facts here reflect that Thompson never requested the lesser-included offense during the subsequent trial. Furthermore, the record shows no waiver of the indictment.

¶58.    The circuit court instructed the jury during Thompson's subsequent trial on the lesser-included offense without an instruction or prosecution on Count II of the indictment. The jury should have been instructed to first consider the offense charged in Count II and that, after full and careful consideration of the evidence, the jury could then proceed to arrive at a verdict on a lesser-included crime. *Cf. Fulgham v. State*, 46 So. 3d 315, 329-30 (¶40) (Miss. 2010) (finding no abuse of discretion in the trial court's grant of an "acquit-first" lesser-included-offense instruction); *see also Jones v. State*, 142 So. 3d 420, 425 (¶17) (Miss. Ct. App. 2013) (finding no abuse of discretion where the trial court instructed the jury that the State carried the burden to prove every element of the offense charged in the indictment count and that, if the State failed to prove all the elements, then the jury could consider the lesser-included offense). Clearly, the jury should be instructed on the charged offense and should be instructed to consider the charged offense before considering a verdict on a lesser-

---

[8] *Compare Burgess v. State*, 210 So. 3d 569, 577-78 (¶¶32-34) (Miss. Ct. App. 2016) (finding no abuse of discretion in the trial court's grant of an "acquit-first" lesser-included-offense instruction) *with White v. State*, 149 So. 3d 556, 559-60 (¶¶10-12) (Miss. Ct. App. 2014) (finding no abuse of discretion where the trial court instructed the jury on both the crime charged in the indictment and on a lesser-included offense).

included offense.

¶59.     As discussed, *Decker* provides that, "once the grand jury hands down a true bill that alleges an accused committed a particular crime by engaging in certain conduct—absent waiver or a request for a lesser[-]included offense—the accused must be prosecuted for that crime, and no other." *Decker*, 66 So. 3d at 656 (¶6).  Furthermore, challenges to the substantive sufficiency of an indictment are not waivable and may be raised for the first time on appeal.  *State v. Berryhill*, 703 So. 2d 250, 254 (¶16) (Miss. 1997); *Johnson v. State*, 94 So. 3d 1209 (¶21) (Miss. Ct. App. 2011).  Therefore, based on the foregoing, I would reverse Thompson's conviction and remand the case for the trial court to reinstate the charged indictment to the active trial docket.

        **IRVING, P.J., JOINS THIS OPINION.**