# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00432-COA

**PAUL WEST**                                               **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/13/2022 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/01/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**SMITH, J., FOR THE COURT:**

¶1. A Leflore County Circuit Court jury found Paul West guilty of one count of sexual battery while in a position of trust or authority under Mississippi Code Annotated section 97-3-95(2) (Rev. 1994 & Supp. 1995) (Count I) and one count of gratification of lust while in a position of trust and authority under section 97-5-23(2) (Rev. 1994) (Count II). The court sentenced West to serve thirty years for sexual battery and fifteen years for gratification of lust, with both sentences to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). On appeal, West argues the following: (1) there was insufficient evidence to support his sexual-battery conviction, and (2) the circuit court committed plain

error by failing to sua sponte declare a mistrial or admonish the jury after certain witness comments. Finding no reversible error, we affirm West's convictions and sentences.

**FACTS**

¶2. During the 1990s, West worked as a teacher and principal at St. Francis of Assissi School (St. Francis) in Greenwood, Mississippi. In 2019, the Mississippi Attorney General's Office (the Attorney General's Office) began investigating West after St. Francis reported allegations that West had committed sexual abuse during his tenure at the school. The investigation led to West's indictment during the August 2020 term for the abuse of a former student, Logan.[1] Count 1 of West's indictment stated that

> on or about and between the years of 1994 and 1996, . . . Paul West, . . . did willfully, unlawfully, and feloniously engage in sexual penetration with [Logan], a child of fourteen (14) years but less than eighteen (18) years, while in a position of trust or authority over [Logan], all in violation of Section 97-3-95(2) of the Mississippi Code of 1972.

Count 2 of the indictment stated that West, "for the purpose of gratifying his lust[,] . . . handled, touched[,] and/or rubbed . . . upon [Logan], a child under the age of eighteen (18) . . . while in a position of trust and authority over [Logan,] all in violation of [section] 97-5-23(2) of the Mississippi Code."

¶3. The circuit court held West's trial on April 12-13, 2022. Gypsi Ward, an investigator with the Attorney General's Office, testified about the abuse Logan had reported to her

---

[1] To protect the victims' identities, we use pseudonyms throughout our opinion in place of their real names.

2

during her investigation. Logan told Ward that the abuse "started by touching and masturbating [Logan] and . . . then led to anal penetration." Ward stated that "[Logan] did disclose that [West] obviously sexually assaulted him, sodomized him anally in the process of the sexual assault." She testified Logan had reported that the abuse started when he was "in the third grade and went through about sixth grade," starting at age "9 or 10-ish." Ward further testified Logan had reported that the abuse "occurred about four to five times a week."

¶4. Logan also testified. He explained that he had attended St. Francis from pre-kindergarten through the eighth grade, which began "sometime in the [n]ineties" while living with his grandmother. Logan also worked at the school during the summer and continued to work there after he transferred to another school in the eighth grade. West oversaw Logan's summer employment. During his time at St. Francis, Logan failed the fourth grade twice and the fifth grade once.

¶5. Logan stated that West began to sexually abuse him when he was in the fourth grade. According to Logan, the abuse continued until he was in the eighth grade and occurred "probably more" than three or four times a week. Logan testified that West had initiated the abuse by inappropriate touching and groping. The abuse then progressed to West showing Logan pornography on his computer and encouraging the touching of each other's penises. Logan also testified about one specific event where West performed oral sex on him during Logan's summer employment at the school. Logan's testimony also indicated that anal

3

penetration occurred as part of the abuse.

¶6.    The State did not ask about, and Logan did not identify, any specific dates or ages for the sexual abuse that involved penetration, which was the only abuse disclosed that fell under Count I of the indictment for sexual battery. Although Logan testified that he was thirty-nine years old at the time of the trial in April 2022, the State did not ask for his date of birth or elicit specific frames of reference regarding the dates he attended St. Francis beyond his statement about "the [n]ineties." Logan volunteered, however, that the last time he had seen West was approximately 1999 or 2000 during a trip to New York.

¶7.    Logan's cousin John also testified that he had attended St. Francis during the 1990s and that West had abused him as well. John lived with Logan when both boys were children. John stated that West began abusing him when he was about twelve or thirteen years old. John described a pattern of abuse similar to what Logan had described. According to John, the abuse continued until he was expelled from St. Francis around age thirteen. In response to the State's question of whether John was sure that West was the perpetrator, the following exchange ensued:

> A.    No, I don't have any doubt. Then there was another [friar] out there that got killed. He told me Brother Paul [West] was going to kill him. And so he dead.
>
> Q.    If you would, just please answer my question.
>
> A.    Okay, yeah.
>
> Q.    Is there any doubt that this is the man that did that to you?

4

A.     Yeah.  He's a child molester and killer.

. . . .

Q.     . . . Was anybody else around?

A.     No.  But Brother Don, he's deceased.

Q.     Okay.

A.     Brother Don Lucas.  Yeah, he was murdered, or maybe suicide.

¶8.    The defense made no contemporaneous objection to John's testimony, and the circuit court issued no comments regarding the statements.  John testified that after he was expelled from St. Francis, West began abusing his younger brother.  John stated that West was "prey[ing] on my family."  Both Logan and John testified that they never told each other about the abuse when they were children.  Following John's testimony, the State rested.

¶9.    After West declined to testify, the defense also rested.  During the jury-instruction conference on the following day, West's attorney realized that the defense had never moved for a directed verdict.  With the circuit court's permission, the defense made its motion for a directed verdict.  The entirety of the motion for a directed verdict was as follows: "I would move for a directed verdict that the crimes charged of sexual abuse and gratification of lust have not been proven, and it's not been proven that [West] is the one who committed the crime."  After the circuit court denied the motion, the defense also unsuccessfully requested that the circuit court give the jury a peremptory instruction that the verdict would be "not guilty" as to Count I for sexual battery.

5

¶10. After closing arguments, the jury returned a guilty verdict for both counts of the indictment. The circuit court sentenced West to serve in MDOC's custody thirty years for Count I for sexual battery and a consecutive fifteen-year term for Count II for gratification of lust. West filed a timely motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. Relevant to the present appeal, West's post-trial motion simply asserted "[t]hat the verdict of the [j]ury is contrary to the law and the evidence and is the result of bias and prejudice, and the verdict is against the overwhelming weight of the evidence." Aggrieved by the circuit court's denial of his post-trial motion, West appeals.

## DISCUSSION

¶11. On appeal, West argues (1) there was insufficient evidence of Logan's age to support the conviction for sexual battery in Count 1 of the indictment; and (2) the circuit court committed plain error by failing to sua sponte declare a mistrial or to admonish the jury after John's trial testimony implied that West was involved in another man's death.

### I. The Sufficiency of the Evidence as to Count I for Sexual Battery

¶12. For Count I, West was indicted under Mississippi Code Annotated section 97-3-95(2) (Rev. 1994), which was the version of the statute in effect at the time of the ongoing abuse reported by Logan. The applicable version of section 97-3-95(2) provided as follows:

> A person is guilty of sexual battery if he or she engages in sexual penetration *with a child of fourteen (14) but less than eighteen (18) years* if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

6

Miss. Code Ann. § 97-3-95(2) (Rev. 1994) (emphasis added). Subsection 2 of the statute was later amended to include all children under the age of eighteen. 1998 Miss. Laws ch. 549, § 3 (H.B. 834) (eff. July 1, 1998). The indictment did not allege any act that occurred after 1996. On appeal, West contends that the State failed to prove beyond a reasonable doubt the essential element of age for sexual battery. Specifically, West claims the State never established that Logan was between the ages of fourteen and eighteen during the one act of oral penetration Logan described—the oral sex that West performed on Logan during a summer in the 1990s—or for any acts of anal penetration that occurred. As a result, West contends that there was insufficient evidence to support his sexual-battery conviction in Count I.

¶13.    "In considering whether the evidence is legally sufficient to sustain a conviction, 'the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Carpenter v. State*, 311 So. 3d 1268, 1275 (¶26) (Miss. Ct. App. 2021) (quoting *Thompson v. State*, 269 So. 3d 301, 308 (¶17) (Miss. Ct. App. 2018)). We apply de novo review. *Id.* "The relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). We accept all evidence supporting a guilty verdict as true, "and the State must be given the benefit of all reasonable inferences that can be drawn from the evidence." *Id.*

7

(quoting *Galloway v. State*, 122 So. 3d 614, 665 (¶168) (Miss. 2013)). "Appellate courts 'should reverse only where, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.'" *Id.* (quoting *Boyd v. State*, 977 So. 2d 329, 337 (¶28) (Miss. 2008)).

¶14. "In a prosecution for sexual battery, the age of the victim is an essential element of the offense that must be alleged and proved." *Washington v. State*, 645 So. 2d 915, 918 (Miss. 1994). "The State, as prosecutor, is bound by law to prove beyond a reasonable doubt every element of the crime." *Id.* at 919. Here, however, we do not reach the merits of West's contention that the State failed to sufficiently prove Logan's age. As Mississippi caselaw establishes, "[a] motion for a JNOV in which the sufficiency of the evidence is challenged must be specific." *Gary v. State*, 11 So. 3d 769, 771 (¶8) (Miss. Ct. App. 2009). Our precedent holds that "[w]ithout specificity as to how the evidence was insufficient, the trial court will not be determined to be in error for denying the motion." *Id.*; *see also Easterling v. State*, 306 So. 3d 808, 818 (¶23) (Miss. Ct. App. 2020) ("A motion for a directed verdict on the grounds that the State has failed to make out a prima facie case must state specifically wherein the State has failed to make out a prima facie case. Such specificity is also required in a motion for a JNOV. If not specifically argued before the trial court, it is waived because issues may not be raised for the first time on appeal." (citations and internal quotation mark omitted)).

¶15. The record here clearly reflects, and the separate opinion acknowledges, that although

8

he had multiple opportunities to do so, West never argued before the circuit court the specific issue he now raises on appeal. Neither in his motion for a directed verdict nor in his motion for a JNOV did West raise even a general challenge to the sufficiency of the evidence that supported his sexual-battery conviction in Count I—much less a more specific allegation as to the essential element of Logan's age. Only on appeal does West assert for the first time that the State failed to sufficiently prove the required element of Logan's age to convict West of sexual battery. Despite West's repeated failure before the circuit court to challenge the sufficiency of the evidence supporting his sexual-battery conviction—and despite our clear precedent requiring him to do so prior to an appeal—both West and the separate opinion now urge this Court to overlook well-established caselaw on this matter. Upon careful consideration, we decline to do so.

¶16. "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *McNeer v. State*, 307 So. 3d 508, 517 (¶28) (Miss. Ct. App. 2020). Because West failed to preserve his sufficiency-of-the-evidence issue for appellate review, we conclude this issue is procedurally barred. Accordingly, we find no reversible error.

## II. The Circuit Court's Alleged Failure to Sua Sponte Declare a Mistrial

¶17. West next argues that the circuit court's failure to sua sponte admonish the jury or to declare a mistrial after John's unsolicited comments rendered the trial fundamentally unfair. Because West made no contemporaneous objection to John's statements at trial, he must rely

9

on the plain-error doctrine to raise this issue on appeal. "[P]lain error is reserved for 'unusual circumstances, as a means of preventing a manifest miscarriage of justice.'" *Donelson v. State*, 158 So. 3d 1154, 1161 (¶38) (Miss. Ct. App. 2014) (quoting *Goff v. State*, 14 So. 3d 625, 655 (¶118) (Miss. 2009)). "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether that error has prejudiced the outcome of the trial." *Williams v. State*, 351 So. 3d 482, 487 (¶12) (Miss. Ct. App. 2022) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶15) (Miss. 2013)).

¶18.   "Generally, evidence of a crime other than that charged in an indictment is not admissible against the accused." *King v. State*, 857 So. 2d 702, 723 (¶61) (Miss. 2003) (citing *Townsend v. State*, 681 So. 2d 497, 506 (Miss. 1996)). Here, John made several statements on direct examination that implied West was involved in the death of another man. As the record reflects, John's comments were unsolicited by the State and were not responsive to the State's questions. Even so, West made no objection to John's comments. Following John's comments, the circuit court neither sua sponte declared a mistrial nor admonished the jury regarding the comments. Instead, the circuit court allowed the trial to continue after the State's attorney requested that John "just please answer my question."

¶19.   The Mississippi Supreme Court has held that "[m]istrials should only be declared sua sponte when manifestly necessary." *Arrington v. State*, 267 So. 3d 753, 758 (¶17) (Miss. 2019) (citing *Younger v. State*, 931 So. 2d 1289, 1291 (¶7) (Miss. 2006)). The supreme court

10

has also provided the following examples to demonstrate when the declaration of a mistrial "would likely be a manifest necessity: failure of a jury to agree on a verdict; biased or otherwise tainted jury; improper separation of the jury; where jurors failed to follow instructions." *Id.* (quoting *Spann v. State*, 557 So. 2d 530, 532 (Miss. 1990)).

¶20.    John's unsolicited and speculative trial comments did not rise to the same level of the examples provided by the supreme court. "[Caselaw] unequivocally holds that the trial judge is in the best position for determining the prejudicial effect of an objectionable remark." *Edwards v. State*, 305 So. 3d 1186, 1190 (¶10) (Miss. Ct. App. 2020) (quoting *Wilson v. State*, 102 So. 3d 1200, 1205 (¶20) (Miss. Ct. App. 2012)).    "The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared." *Id.*   In addition, "Mississippi law places the burden upon counsel to request that the court issue such an admonition and conduct . . . a polling after an improper comment is made . . . ." *Lee v. State*, 910 So. 2d 1123, 1127 (¶16) (Miss. Ct. App. 2005). "It is the duty of a trial counsel, if he deems opposing counsel is overstepping the wide range of authorized argument, to promptly make [an] objection and insist upon a ruling by the trial court." *Id.* at 1127-28 (¶17) (quoting *Johnson v. State*, 477 So. 2d 196, 209-10 (Miss. 1985)). "[I]f the lower court rules that a statement was improper, the lower court must then admonish the jury to disregard the statement, unless the statement caused serious and irreparable damage; in that case, the trial judge may grant a mistrial." *Id.* at 1128 (¶17).   From the outset, however, the duty remains with "opposing counsel . . . to object promptly and to

11

'insist' that the judge rule on the issue and admonish the jury." *Id.* (quoting *Johnson*, 477 So. 2d at 210).

¶21. Here, without any contemporaneous objection by West to John's unsolicited comments, the circuit court committed no abuse of discretion by failing to sua sponte declare a mistrial or to admonish the jury. Upon review, we find nothing unusual or manifestly unjust in how the circuit court addressed John's statements. We therefore find no plain error as to this issue.

## CONCLUSION

¶22. Because we find no reversible error related to West's arguments on appeal, we affirm his convictions and sentences as to Count I for sexual battery and Count II for gratification of lust.

¶23. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., LAWRENCE AND McCARTY, JJ., CONCUR. BARNES, C.J., McDONALD AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.; GREENLEE, J., JOINS IN PART.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶24. It aggrieves me greatly that the majority has decided not to give deference to the procedural and constitutional standards that we are sworn to uphold. West's charged offenses are deeply disturbing, but that does not overshadow the fact that this Court must

12

make sure that if a person is going to be convicted—no matter the offense—that every element is to be proven beyond a reasonable doubt. And when an element is not proven beyond a reasonable doubt, even though the issue was not properly preserved, our most reserved standard of review still exists: plain error. *Ladd v. State*, 87 So. 3d 1108, 1113 (¶¶16-17) (Miss. Ct. App. 2012). In other words, regardless if the error regarding the failure to prove an element was properly raised by the defendant, our Court has an obligation to correct certain trial court errors to avoid "an error that result[s] in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Garcia v. State*, 300 So. 3d 945, 976 (¶104) (Miss. 2020) (quoting *Ambrose v. State*, 254 So. 3d 77, 136 (¶193) (Miss. 2018)). In this case, there is no question that the essential element of age was not proved in this trial for sexual battery while in a position of trust or authority (Count I). Because of the State's failure to provide any evidence of the essential element of age in the sexual-battery conviction, I maintain that this conviction alone should be reversed and an acquittal rendered after an obligatory plain error review. I agree with the majority's decision to affirm West's conviction of gratification of lust (Count II). Accordingly, I must respectfully concur in part and dissent in part from the majority's opinion.

¶25. Paul West was a former Franciscan friar who worked in Mississippi as a teacher and principal during the 1990s. In 2019, the Mississippi Attorney General's Office began to investigate West after abuse allegations were reported to them by the school where he once worked. This investigation led to the indictment of West for two charges. Count I of the

13

indictment was sexual battery while in a position of trust and authority under section 97-5-95(2) (Rev. 1994). Count II of the indictment was for the gratification of lust while in a position of trust and authority under section 97-5-23(2) (Rev. 1994 & Supp. 1995). West appealed his conviction for sexual battery on the basis of insufficient evidence because the State failed to put on any evidence of Logan's age during a penetrative act that would constitute sexual battery.

¶26. The State argues, and the majority holds, that West did not raise his sufficiency-of-the-evidence issue regarding the age element in his motion for a JNOV. In his JNOV motion, West objected to the weight of the evidence, not its sufficiency. And West's motion for a directed verdict and peremptory jury instruction generally mentioned "that the crimes charged . . . have not been proven." It is true that "[a] motion for a JNOV in which the sufficiency of the evidence is challenged must be specific." *Gary v. State*, 11 So. 3d 769, 771 (¶8) (Miss. Ct. App. 2009) (citing *Jordan v. State*, 936 So. 2d 368, 372 (¶20) (Miss. Ct. App. 2005)). And "it is well established that this Court does not entertain arguments made for the first time on appeal . . . ." *Maness v. K & A Enters. of Miss. LLC*, 250 So. 3d 402, 410 (¶21) (Miss. 2018) (quoting *Weiner v. Meredith*, 943 So. 2d 692, 696 (¶17) (Miss. 2006)). But this Court retains the power under Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure to notice as plain error the State's failure to prove to the jury all the essential elements of the offense charged.

¶27. "[U]nder the Mississippi Rules of Evidence, when a substantial right is affected, plain

error may be considered by an appellate court." *Maness*, 250 So. 3d at 410 (¶21) (citing MRE 103(f)). "To constitute plain error, the trial court must have deviated from a legal rule, the error must be plain, clear or obvious, and the error must have prejudiced the outcome of the trial." *Keithley v. State*, 111 So. 3d 1202, 1204 (¶8) (Miss. 2013). "A review under the plain-error doctrine is necessary when a party's 'substantive or fundamental rights are affected,' and the error results 'in a manifest miscarriage of justice.'" *Ladd*, 87 So. 3d at 1113 (¶17) (quoting *Jenkins v. State*, 75 So. 3d 49, 57 (¶22) (Miss. Ct. App. 2011)).

¶28.     "The right not to be convicted unless the State proves guilt beyond a reasonable doubt is a fundamental right . . . guaranteed by our state constitution, as well as the Due Process Clause of the federal constitution." *McBride v. State*, 934 So. 2d 1033, 1038 (¶24) (Miss. Ct. App. 2006) (citing *In re Winship*, 397 U.S. 358, 364 (1970)); *Evans*, 919 So. 2d at 235 (¶15). As such, its violation is noticeable as plain error. *Id*. This Court has unequivocally stated, "It is not open to reasonable debate that the right—not to be convicted of an offense unless the State proves beyond a reasonable doubt each and every element of the offense—is a fundamental right anchored in our constitution and the jurisprudence of this state." *Ladd*, 87 So. 3d at 1113-14 (¶17) (quoting *Evans v. State*, 919 So. 2d 231, 235 (¶15) (Miss. Ct. App. 2005)). "It is hornbook criminal law that before a conviction may stand the State must prove each element of the offense." *Washington v. State*, 645 So. 2d 915, 918 (Miss. 1994) (quoting *Neal v. State*, 451 So. 2d 743, 757 (Miss. 1984)). Furthermore, "Due Process requires that the State prove each element of the offense beyond a reasonable doubt." *Id*.

15

(citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). The majority correctly states that the issue was not raised with specificity in West's motion for a directed verdict or JNOV before the majority declines to review West's sufficiency-of-the-evidence issue on the merits. *Ante* at ¶¶14-15. But "a defendant's failure to object to the State's failure to prove and present instructions on an essential element of the offense . . . [does not] waive the State's failure to meet its burden." *Evans*, 919 So. 2d at 235 (¶15). Given the preceding caselaw, I would acknowledge as plain error the issue of insufficiency of the proof of the essential element of age in West's case.

¶29. The sexual battery statute under which West was indicted stated:

> A person is guilty of sexual battery if he or she engages in sexual penetration with a child of fourteen (14) but less than eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

Miss. Code Ann. § 97-5-95(2) (Rev. 1994). A clear reading of the statute lists the following two concurrent elements the State was required to prove to convict West under the sexual battery statute: (1) that sexual penetration occurred when Logan was (2) between the ages of fourteen and eighteen. Like the sexually penetrative act, the age of the victim is an essential element in this statute. *See Ringer v. State*, 203 So. 3d 794, 797 (¶10) (Miss. Ct. App. 2016); *Washington*, 645 So. 2d at 918. As the majority acknowledges, the Supreme Court has explicitly stated that "[i]n a prosecution for sexual battery, the age of the victim is an essential element of the offense that must be alleged and proved." *Washington*, 645 So.

16

2d at 918. "The State, as prosecutor, is bound by law to prove beyond a reasonable doubt every element of the crime." *Id*. at 919. In crimes that are defined by the ages of the persons involved, such as this one, "the age of the victim 'makes or breaks' the conviction." *Id*. The Supreme Court also has explicitly noted that

> [t]he prosecution's failure to offer proof as to this element [the age of the victim] in sexual assault cases parallels the situation in which the prosecution fails to offer proof that an alleged victim of a murder is in fact dead. Such proof is usually easy to come by. But if the prosecution does not bring it before the jury, it has not overcome the presumption of innocence.

*Id.*

¶30. Here, the State failed to put on any proof of Logan's age at the time of the sexually penetrative act that qualified as sexual battery. Although Logan's testimony described terrible abuse at the hands of West, Logan only described one sexual act involving penetration in his testimony—oral sex performed on him by West. Logan's only indication of a time frame for this penetrative act of oral sex was "during the summertime" in the 1990s. Logan did not testify about any acts of anal penetration. His testimony only seemed to acknowledge the act of anal penetration when the defense attorney asked him on cross-examination, "A man teaching you how to masturbate, a man showing you pornography, a man entering you by your anus, and you didn't think that was wrong?" In response Logan testified, "At the time I didn't." Logan made no additional statements about anal penetration in his testimony. Investigator Gypsi Ward testified that Logan told her during her investigation that anal penetration was a part of the abuse. But the State did not ask about,

17

and Gypsi and Logan did not name, any date, age, or range of dates regarding anal penetration that may have occurred. The record itself is devoid of any additional evidence regarding Logan's age at the time of a penetrative act.

¶31. While the majority refuses to comment, the State argues that a jury could infer that Logan was between the ages of fourteen and eighteen for the penetrative acts of abuse because Logan testified (1) that he was thirty-nine years old in April 2022 at the time of the trial and (2) that he was abused four to five times a week between the fourth and eighth grades. An eighth-grade child is usually between ages thirteen and fourteen. But the calculation of Logan's age during these school years is complicated by the State's inexplicable failure to ask Logan his birthday (although his testimony about his age at the time of the trial means he must have been born in either 1982 or 1983). This uncertainty is combined with the vague testimony that stated Logan repeated either two or three grades. The State failed to present evidence regarding what year Logan started school at St. Francis or what years he attended the fourth through eighth grade beyond "sometime in the Nineties." When asked what year he attended the eighth grade, Logan said, "I wish I knew . . . I was hoping that y'all pulled those records up." Understandably, Logan could not recall the exact dates of his abuse on the stand since approximately thirty years had passed since the events in question. But the State's lack of records or adequate witness questions makes Logan's age during each grade no more than a guess.

¶32. Even if a jury could infer Logan's approximate age in eighth grade and that Logan

18

was abused in the eighth grade, the State completely failed to identify Logan's age at the time the *penetrative acts* of sexual abuse occurred. Penetrative acts are the *only* abusive acts that fall under this sexual-battery charge. The orally penetrative act was only described as having occurred "during the summertime." And there is no reference in the record to a date, a year, or Logan's age at the time that any possible anal penetration occurred. "There must be in the record evidence sufficient to establish each element of the crime." *Washington*, 645 So. 2d at 918 (quoting *Fisher v. State*, 481 So. 2d 203, 211 (Miss. 1985), *overruled on other grounds by Nevels v. State*, 325 So. 3d 627, 634 (¶20) (Miss. 2021). Because there is no evidence of Logan's age at the time of the penetrative acts that qualify as sexual battery, this element has not been proven beyond a reasonable doubt as the law requires. *Id.* at 918-19.

¶33. In the present case, the State has failed to prove an essential element of the crime with which West was indicted, charged, and convicted. As a result, I maintain that this Court should follow our caselaw to review this matter under plain error and ultimately reverse and render on the sexual battery conviction (Count I). *Id*. at 920. On all other issues, I would affirm. For these reasons, I must respectfully concur in part and dissent in part from the majority.

**McDONALD, J., JOINS THIS OPINION. GREENLEE, J., JOINS THIS OPINION IN PART.**